**D.LAW, INC.**
David Keledjian (SBN 309135)
d.keledjian@d.law
450 N. Brand Blvd., Suite 840
Glendale, CA 91203
Telephone: (818) 962-6465
Facsimile: (818) 962-6469

Attorneys for Plaintiff NISHAE D. BROWN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NISHAE D. BROWN, on behalf of herself and all others similarly situated, and the general public,

*Plaintiff*,

v.

LULULEMON USA INC., a Nevada corporation; LULULEMON, a business entity of unknown form; LULULEMON ATHLETICA USA, INC., a business entity of unknown form, and DOES 1 through 50, inclusive,

*Defendants*.

Case No.: 2:25-cv-09629

Assigned for All Purposes to the Honorable Judge Wesley L. Hsu

[Removed from the Superior Court of the State of California, County of Los Angeles, Case No. 25STCV25917]

State Complaint Filed: September 3, 2025

**AMENDED AS A MATTER OF RIGHT PURSUANT TO RULE 15**

**INDIVIDUAL COMPLAINT FOR:**

1. Sex Discrimination in Violation of Gov. Code § 12940 *et seq.*;
2. Sexual Harassment in Violation of Gov. Code § 12940 *et seq.*;
3. Failure to Prevent Discrimination and Harassment in Violation of Gov. Code § 12940(k);
4. Retaliation in Violation of Gov. Code § 12940(h);
5. Violation of Labor Code § 1102.5;
6. Wrongful Termination in Violation of Public Policy; and
7. Intentional Infliction of Emotional Distress

**CLASS ACTION COMPLAINT FOR:**

8. Failure to Provide Meal Periods (Lab.

Code §§ 204, 223, 226.7, 512 and 1198);

9. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198);
10. Failure to Pay Hourly Wages and Overtime (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1 and 1198);
11. Failure to Pay Proper Sick Pay (Lab. Code § 246);
12. Failure to Pay Proper Vacation Wages (Lab. Code § 227.3);
13. Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a));
14. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203);
15. Failure to Indemnify (Lab. Code § 2802); and
16. Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*).

**JURY TRIAL DEMANDED**

Plaintiff NISHAE D. BROWN ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, complains and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action against Defendants LULULEMON USA INC., a Nevada corporation; LULULEMON, a business entity of unknown form; LULULEMON ATHLETICA USA, INC., a business entity of unknown form (LULULEMON USA INC., LULULEMON, and LULULEMON ATHLETICA USA, INC., collectively referred to as "The Company"); JARON KOBY, an individual; and DOES 1 through 50, inclusive, (collectively referred to as "Defendants") for alleged violations of the California Labor Code and California Business and Professions Code. As set forth below, Plaintiff alleges that The Company has:

a. failed to pay them overtime wages at the correct rate;

b. failed to pay them double time wages at the correct rate;

c. failed to pay them overtime and/or double time wages by failing to include all applicable remuneration in calculating the regular rate of pay;

d. failed to provide them with meal periods;

e. failed to provide them with rest periods;

f. failed to pay them premium wages for missed meal and rest periods;

g. failed to pay them proper sick time pay;

h. failure to pay proper vacation wages;

i. failed to provide them with accurate written wage statements;

j. failed to reimburse them with necessary business expenditures;

k. failed to pay them all their final wages following separation of employment.

Based on these alleged Labor Code violations, Plaintiff now brings this class action to recover unpaid wages, liquidated damages, penalties, restitution, and related relief on behalf of herself, all others similarly situated, and the general public.

Plaintiff also brings this individual action for sex discrimination, harassment, and related claims, against the Company and Defendant JARON KOBY, as alleged herein, to recover compensatory damages, general and special damages, punitive and exemplary damages, injunctive

relief, and any other relief as the court deems proper.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction to hear this case because the monetary damages and restitution sought by Plaintiff from Defendants' conduct exceeds the minimal jurisdiction of the Superior Court of the State of California.

3. Venue is proper in the County of Los Angeles pursuant to Code of Civil Procedure sections 395(a) and 395.5 in that liability arose this county because at least some of the transactions that are the subject matter of this Complaint occurred therein and/or each defendant is found, maintains offices, transacts business and/or has an agent therein.

4. Venue is proper in Los Angeles County because Defendants have at all times alleged herein, conducted business in Los Angeles County, and throughout California. As such, venue is proper in any county in California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to the initiation of this lawsuit, Plaintiff filed a complaint against each named defendant with the California Civil Rights Department (CRD) pursuant to California Government Code section 12900, *et seq.*, alleging the claims described in this complaint. On March 13, 2025, the CRD issued a "right to sue" letter. A true and correct copy of the administrative complaint and the "right to sue" letter is attached as **Exhibit A**. All conditions precedent to the institution of this lawsuit have been fulfilled. This action is filed within one year of the date that the CRD issued its right to sue letter.

## PARTIES

6. Plaintiff NISHAE D. BROWN is, and at all relevant times mentioned herein, an individual residing in the State of California.

7. Plaintiff is informed and believes, and thereupon alleges that Defendant LULULEMON USA INC. is, and at all relevant times mentioned herein, a Nevada corporation doing business in the State of California.

8. Plaintiff is informed and believes, and thereupon alleges that Defendant LULULEMON is, and at all relevant times mentioned herein, a business entity of unknown form

doing business in the State of California.

9. Plaintiff is informed and believes, and thereupon alleges that Defendant LULULEMON ATHLETICA USA, INC. is, and at all relevant times mentioned herein, a business entity of unknown form doing business in the State of California.

10. Plaintiffs are informed and believe, and thereupon allege, that Defendant JARON KOBY (surname unknown and hereinafter "KOBY") is, and at all relevant times mentioned herein, an individual residing in the State of California.

11. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained. Plaintiff is informed and believes, and thereupon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these defendants, and each of them. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

12. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some or all of the defendants were the representatives, agents, employees, partners, directors, associates, joint venturers, joint employers, owners, principals or co-participants of some or all of the other defendants, and in doing the things alleged herein, were acting within the course and scope of such relationship and with the full knowledge, consent, and ratification by such other defendants.

13. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some of the defendants pursued a common course of conduct, acted in concert and conspired with one another, and aided and abetted one another to accomplish the occurrences, acts and omissions alleged herein.

14. Plaintiff is informed and believes and thereon alleges that each defendant (as part of the Company, defined above) acted in all respects pertinent to this action as the agent of the other, that the Company carried out a joint scheme, business plan, or policy in all respects pertinent hereto,

and that the acts of each defendant (as part of the Company, defined above) is legally attributable to the other. Furthermore, the Company acted in all respects as the employers or joint employers of Employees. Each Defendant under the Company exercised control over the wages, hours or working conditions of Employees, or suffered or permitted Employees to work, or engaged, thereby creating a common law employment relationship, with Employees. Therefore, the Company, and each of them, employed or jointly employed Employees.

15. This action has been brought and may be maintained as a class action pursuant to Federal Rule of Civil Procedure, Rule 23, because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

16. **Relevant Time Period**: The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is entered.

a. **Hourly Employee Class**: All persons employed by the Company, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action ("Hourly Employee Class").

b. **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.

c. **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.

d. **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.

e. **Sick-Pay Class:** All persons employed by the Company in California who, at any time from four years prior to the filing of this action and ending on the date that final judgment is entered in this action, worked for more than 30 days for the Company, and were not paid for at least one hour of sick time for every 30 hours of work thereafter, or at least 3 days of sick time for every 12-month period of employment.

f. **Vacation Pay Class**: All persons employed by the Company in California who earned paid vacation time and/or paid time off without receiving compensation for all vested paid vacation time during the **Relevant Time Period**.

g. **Wage Statement Class**: All persons employed by the Company in California

during the period beginning one year before the filing of this action and ending when final judgment is entered.

h. **Expense Reimbursement Class:** All persons employed by the Company in California who incurred business expenses during the **Relevant Time Period**.

i. **UCL Class**: All **Hourly Employee Class** and **Expense Reimbursement Class** members employed by the Company in California during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.

17. **Reservation of Rights**: Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into sub-classes and/or by limitation to particular issues.

18. **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the minimum required for numerosity under California law.

19. **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions include, but are not limited to:

a. Whether the Company maintained a policy or practice of failing to provide employees with their rest periods;

b. Whether the Company maintained a policy or practice of failing to provide employees with their meal periods;

c. Whether the Company failed to pay premium wages to class members when they have not been provided with meal and rest periods at the appropriate rates of pay;

d. Whether the Company failed to pay minimum and/or overtime wages to class members for all time worked;

e. Whether the Company failed to pay proper sick time pay;

f. Whether the Company failed to pay proper vacation wages;

g. Whether the Company failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with

inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

h. Whether the Company applied policies or practices that result in late and/or incomplete final wage payments;

i. Whether the Company failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

j. Whether the Company are liable to class members for waiting time penalties under Labor Code section 203; and

k. Whether class members are entitled to restitution of money or property that the Company may have acquired from them through unfair competition;

20. **__Typicality__:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes, and thereupon alleges that the Company has a policy or practice of failing to comply with the California Labor Code and Business and Professions Code as alleged in this Complaint.

21. **__Adequacy of Class Representative__:** Plaintiff is an adequate class representative and has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

22. **__Adequacy of Class Counsel__:** Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

23. **__Superiority__:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it

difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS

24. Plaintiff worked for The Company as a non-exempt employee during the relevant and statutory periods.

25. Plaintiff was hired by The Company on or around October 9, 2024. Plaintiff was a hardworking and steadfast employee, who performed her job duties competently and efficiently, within the Defendants' rules, requirements, and policies.

26. On or around Plaintiff's first week of working for Defendants, she met Defendant JARON KOBY (hereinafter, "KOBY.") KOBY worked for The Company as an Assistant Manager, and Plaintiff's supervisor.

27. About 2-3 weeks into working for The Company, Plaintiff was sitting with other co-workers in the fitting room area when KOBY came to introduce himself to her. When Plaintiff stuck out her hand to give KOBY an introductory handshake, KOBY stepped forward and hugged Plaintiff against her will, to which Plaintiff responded that she prefers handshakes. KOBY stated, "we do hugs around here."

28. On several occasions, while Plaintiff was off the clock, KOBY would call Plaintiff on her personal phone regarding non-work-related issues.

29. On several occasions, Plaintiff noticed KOBY staring at her buttocks while she was wearing leggings at work, which made Plaintiff very uncomfortable. To make matters worse, KOBY would make inappropriate comments to other employees (including women) about the female employees' buttocks.

30. Plaintiff has complained to The Company on several occasions about KOBY's inappropriate and sexually harassing behavior.

a. First, Plaintiff complained verbally in person to The Company's then-Regional Manager James Bernard ("BERNARD") about KOBY and his unprofessionalism

in the work place. She stated she did not feel comfortable with KOBY. BERNARD understood and acknowledged that he felt something was wrong in the store. BERNARD asked Plaintiff to send an email to him and asked Plaintiff to hang on, give him a month or two, and he was going to "handle it." Shortly thereafter, BERNARD resigned from working at The Company and nothing changed.

b. Second, Plaintiff complained verbally in person to the temporary Store Manager, Brianna. Plaintiff told Brianna she felt uncomfortable working with KOBY, that he was unprofessional with the female employees in the store, and that she believed he was having an inappropriate relationship with another employee. She complained that she feels uncomfortable when KOBY hugs her.

c. Third, Plaintiff complained verbally in person to a corporate worker of The Company, that had visited the store for a review. She stated that KOBY was extremely unprofessional.

31. With no remedial measures taken by the Company regarding Plaintiff's serious complaints regarding her intolerable work environment, Plaintiff was forced to resign and/or constructively terminated from the Company's employ.

32. The Company had a common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked, at the proper rates of pay. First, The Company implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiff and Class Members, and upon which their pay was based, and generally did so to the detriment of the Plaintiff and Class Members, and these unlawfully rounded time entries were inputted into the Company's payroll system from which wage statements and payroll checks were created. The Company did so with the ostensible intent of paying Plaintiff and Class members only for the hours they were scheduled to work, rather than the hours they were actually under the Company's control. Plaintiff contends this policy is not neutral and results, over time, to the detriment of the Plaintiff and Class members by systematically undercompensating them.

33. Next, Plaintiff and Class Members were also consistently required to perform work, off-the-clock, for which they were not paid wages. Specifically, Plaintiff and Class Members were required to wait outside of the store location for their manager to arrive at work and allow them inside for them to clock in using the timeclock. Afterwards, the manager would adjust their clock-in times. Further, after clocking out of work, Plaintiff and Class Members would discuss work-related issues with their co-workers and supervisors, either on the premises or over the phone. Moreover, Plaintiff and Class Members were required to download applications and check their schedules off the clock, for which no wages were paid. Lastly, Plaintiff and Class Members' meal periods were interrupted and not duty-free, and they were not paid any wages for work conducted during their unpaid meal periods. The forgoing and uncompensated working time was under the direction and control of The Company, for which no wages were paid.

34. This uncompensated time caused Plaintiff and Class Members to work in excess of eight (8), ten (10) and/or twelve (12) hours a day and/or forty (40) hours a week, entitling Plaintiff and Class Members to minimum and overtime wages, which they were systemically denied.

35. The Company also failed to pay Plaintiff and Class Members overtime wages at the proper and applicable regular rates of pay. Specifically, Plaintiff and Class Members earned commissions, spiff pay, as well as performance-based non-discretionary bonuses in addition to their hourly pay. However, these supplemental earnings were not accounted for when determining Plaintiff and Class Members' regular rates of pay, and respective and proper overtime rates of pay.

36. The Company had a common policy and practice of systemically denying Plaintiff and Class Members the opportunity to take meal periods in compliance with the California Law. Specifically, due to understaffing, heavy workloads, and the pre-shift duties noted above, Plaintiff and Class Members were denied the opportunity to take timely meal periods prior to the completion of their fifth hour of work. Furthermore, Plaintiff and Class Members were not relieved of all work duties during unpaid meal periods and were required to keep working during meal breaks.

37. Plaintiff and Class Members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) The Company's policy of not scheduling each meal period as part of each work shift; (2) no formal written meal policy that encouraged employees

to take their meal periods, or that advised Class Members of their meal and rest period rights; and (3) The Company's practice of requiring putative class members to continue working through their meal and rest periods due to the excessive workload.

38. Defendants had a common policy and practice of systemically denying Plaintiff and Class Members the opportunity to take rest periods in compliance with the California Law. Plaintiff and Class Members were not provided with first, second, and third rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each rest period as part of each work shift, including second rest breaks for shifts of six (6) hours or more; (2) no formal compliant written rest period policy that encouraged employees to take their rest periods, or that properly advised Plaintiff and Class Members of their rest period rights; and (3) The Company's policy and practice of requiring putative class members to continue working through their rest breaks due to the excessive workload.

39. Furthermore, The Company failed to pay Plaintiff and Class Members premium pay wages at their appropriate regular rates of pay for each meal and rest period denied.

40. Plaintiff and Class Members were not provided with accurate wage statements as mandated by law pursuant to Labor Code section 226. Specifically, Defendants failed to issue wage statements as "a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing." Additionally, the wage statements issued to Plaintiff and Class Members were not recorded in "ink or other indelible form."

41. The Company failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that: all hours worked, including overtime, were not included.

42. The Company failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

43. The Company failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that: all hours worked, including overtime, were not included.

44. The Company failed to comply with Labor Code section 226(a)(9) as "all applicable

hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

45. Furthermore, The Company failed to provide Plaintiff and Class Members with paper pay stubs as required by Labor Code § 226, applicable Wage Orders, and DLSE Opinion Letters. Plaintiff's and Class Members' wage statement were only provided in electronic format in violation of Labor Code § 226.

46. Plaintiff and Class Members were not reimbursed for business expenses incurred in executing their duties under The Company's employ. Specifically, Plaintiff and Class Members were required to pay the costs of their cellphones, which they used to communicate with co-workers and supervisors, their home internet plans which were necessary when working from home, and any stationery they used such as post-it notes, which were all necessary to perform their duties under The Company's employ. Plaintiff and Class members were not reimbursed for these necessary work-related expenses.

47. The Company also had a common policy and practice of systemically failing to pay Plaintiff and Class Members the requisite and accrued vacation time pay in accordance with California Law. Specifically, Plaintiff and Class Members accrued vested vacation time and/or paid time off. However, The Company failed to pay all accrued vacation time and/or paid time off owed to Plaintiff and Class Members upon their separation from employment.

48. Finally, The Company had a common policy and practice of systemically failing to pay Plaintiff and Class Members the requisite sick time pay in accordance with California Law. Specifically, Plaintiff and Class Members earned commissions, spiff pay, as well as performance-based non-discretionary bonuses in addition to their hourly pay. However, these supplemental earnings were not accounted for when determining Plaintiff and Class Members' regular rates of pay, and respective and proper sick rates of pay.

///

///

///

**FIRST CAUSE OF ACTION**

**SEX DISCRIMINATION IN VIOLATION OF GOV. CODE § 12940 *ET SEQ.***

**(Plaintiff Against The Company)**

49. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

50. Under the FEHA an employer may not discriminate against an employee on the basis of sex, which, pursuant to Cal. Gov. Code section 12926(r)(2), includes a person's gender-related appearance.

51. The Company discriminated against Plaintiff by subjecting her to adverse employment actions, including her termination, on account of her sex, as alleged above.

52. As a direct and proximate cause of The Company's violation of the FEHA, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

53. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety, all of which is substantial and enduring. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

54. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**SECOND CAUSE OF ACTION**

**SEXUAL HARASSMENT IN VIOLATION OF GOV. CODE § 12940 *ET SEQ***

**(Plaintiff Against All Defendants)**

55. Plaintiffs reallege and incorporate all preceding paragraphs, as though set forth in full herein.

56. The actions of Defendants, as described in this Complaint, constitute unlawful sexual harassment against Plaintiff.

57. The harassment by Defendants created a hostile, intimidating, and oppressive work environment for Plaintiff, whereby the conditions of their employment were adversely affected. Moreover, the harassment impeded Plaintiffs' process and the enjoyment of their employment for Defendants.

58. Defendants' harassment and discrimination described in this Complaint violates the Fair Employment and Housing Act as promulgated in Government Code section 12940 *et seq*. and other state and federal statutes that prohibit harassment and discrimination in employment, including the California Constitution and Civil Rights Act, as amended. Specifically, as described above, Defendants the Company and KOBY subjected Plaintiff to various sexual advancements, against Plaintiff's will.

59. As a direct and proximate result of Defendants' harassment and discrimination, Plaintiffs have suffered and will continue to suffer damages in an amount within the jurisdiction of this Court, the exact amount to be proven at trial. Such damages include loss of salary and other valuable employment benefits, prejudgment interest and interest on the sum of damages at the legal rate, and other consequential damages, including damages for shame, humiliation, mental anguish, and emotional distress caused by the conduct of Defendants and each of them.

60. In addition, pursuant to Government Code section 12965(b), Plaintiff is entitled to her attorneys' fees in prosecuting this lawsuit.

61. Because the wrongful acts against Plaintiff were carried out, authorized, or ratified by Defendants' directors, officer and/or managing agents, acting with malice, oppression or fraud, or were deliberate, willful, and in conscious disregard of the probability of causing injury to Plaintiff, as reflected by the actions as described earlier in this Complaint, Plaintiff seeks punitive damages against Defendants, and each of them, in order to deter them from such and similar conduct in the future.

///

///

**<u>THIRD CAUSE OF ACTION</u>**

**RETALIATION IN VIOLATION OF <u>GOV. CODE §12940(h)</u>**

**(Plaintiff Against The Company)**

62. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

**63.** At all times herein mentioned, FEHA, Government Code section 12940(h), was in full force and effect and binding on The Company. These statutes require Defendants to refrain from retaliating against Plaintiff.

**64.** Defendants' adverse actions against Plaintiff as described in this Complaint constitute unlawful retaliation against Plaintiff for reporting KOBY's sexual harassment to Defendants.

65. As a direct and proximate cause of Defendants' violation of California Government Code section 12940(h), Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

66. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

**67.** The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

///

///

///

///

**FOURTH CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT IN VIOLATION OF GOV. CODE § 12940(k)**

**(Plaintiff Against The Company)**

68. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

69. At all times mentioned herein, California Government Code section 12940 *et seq.* was in full force and effect and binding on Defendants. These sections require Defendants to take reasonable steps to prevent discrimination from occurring.

70. As alleged herein, Plaintiff suffered unlawful discrimination and harassment at the hands of Defendants.

71. Defendants, and each of them, failed to take all reasonable steps to prevent such harassment and discrimination in violation of Government Code section 12940(k).

72. Defendants failed to take appropriate and/or reasonable steps to train and/or monitor its employees, supervisors and/or managers regarding discrimination by failing to enforce a policy against unlawful discrimination, and by failing to take prompt and appropriate disciplinary action against the perpetrators of discrimination.

73. Defendants failed to take appropriate and/or reasonable steps to train and/or monitor its employees, supervisors and/or managers regarding sexual harassment by failing to comply with California law requiring employers provide sexual harassment prevention training to all employees, including supervisory personnel, as required under California government Code § 12950.1 *et seq.*, failing to enforce a policy prohibiting sexual harassment, and by failing to take prompt disciplinary action against the harassers.

74. As a direct and proximate result of Defendants' failure to take all reasonable steps to prevent harassment and discrimination, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this Court, the exact amount to be proven at trial. Such damages include loss of salary and other valuable employment benefits, prejudgment interest and interest on the sum of damages at the legal rate, and other consequential damages, including

damages for shame, humiliation, mental anguish, and emotional distress caused by the conduct of Defendants and each of them.

75. In addition, pursuant to Government Code section 12965(b), Plaintiff is entitled to his attorneys' fees in prosecuting this lawsuit.

76. Because the wrongful acts against Plaintiff were carried out, authorized, or ratified by Defendants' directors, officers and/or managing agents, acting with malice, oppression or fraud, or were deliberate, willful, and in conscious disregard of the probability of causing injury to Plaintiff, as reflected by the actions as described earlier in this Complaint, Plaintiff seeks punitive damages against Defendants, and each of them, in order to deter them from such and similar conduct in the future.

## FIFTH CAUSE OF ACTION

## VIOLATION OF LABOR CODE § 1102.5

## (Plaintiff Against The Company)

77. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

78. Plaintiff attempted to disclose and remedy the Company's violations of Cal. Gov. Code section 12940 *et seq.,* and Business and Professions Code section 17200 governing discrimination, harassment, retaliation and unfair business practices. Plaintiff disclosed the violations to persons with authority over her, and to another employee who had authority to investigate, discover, or correct the violation or noncompliance.

79. The Company violated Labor Code § 1102.5 by, inter alia:

a. Making, adopting or enforcing a rule, regulation or policy preventing Plaintiff from disclosing information to a government or law enforcement agency, or to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information disclosed was a violation of state or federal statute, or a violation or noncompliance with a state of federal regulation:

b. Retaliating against Plaintiff for disclosing information to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation;

c. Retaliating against Plaintiff for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation; and

d. Retaliating against Plaintiff for having exercised her rights under the foregoing paragraphs 78 a, b, and c.

80. The Company resisted and opposed Plaintiff's attempts to disclose and remedy its violations of Cal. Gov. Code section 12940 *et seq.,* and Business and Professions Code section 17200 governing discrimination, harassment, retaliation and unfair business practices. Indeed, The Company retaliated against Plaintiff for disclosing Defendants/The Company's violations and unlawful practices by constructively terminating her.

81. As a direct and proximate cause of Defendants' violation of Labor Code § 1102.5, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

82. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

**83.** The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the

awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## SIXTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

**(Plaintiff Against The Company)**

84. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

85. Plaintiff's termination was wrongful in that it violated the fundamental public policies of California that prohibit discrimination, harassment, and retaliation on the basis of objecting and complaining about an employer's violations of wage and hour laws and hazardous working conditions, as discussed above.

86. Defendants discharged Plaintiff in violation of the aforementioned public policies, under:

a. California Government Code § 12940, *et seq.*;

b. California Government Code § 12940(h);

c. California Government Code § 12940(k);

d. California Labor Code § 1102.5;

87. As a direct and proximate cause of her wrongful discharge, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

88. As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and continues to suffer actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, emotional distress, humiliation, mental anguish, anger, and embarrassment, all in an amount subject to proof at the time of trial.

89. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

90. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

91. Defendants discriminatory, harassing, and retaliatory actions against Plaintiffs constituted severe and outrageous misconduct and caused Plaintiffs extreme emotional distress.

92. Defendants had the intention of causing and/or recklessly disregarded the probability of causing emotional distress to Plaintiffs and did, in fact, cause emotional distress to Plaintiffs. Defendants' misconduct caused Plaintiff severe emotional distress, including, but not limited to, depression and anxiety.

93. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

94. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damages in a sum according to proof.

95. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**EIGHTH CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 226.7, 512, 1174, and 1198)**

**(Plaintiff and Meal Period Sub-Class against The Company)**

96. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if

fully alleged herein.

97. At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been non-exempt employees of The Company entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order.

98. Labor Code section 512 and Section 11 of the applicable Industrial Welfare Commission Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

99. Labor Code section 226.7 and Section 11 of the applicable Industrial Welfare Commission Wage Order ("Wage Order") both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

100. Compensation for missed meal periods constitutes wages within the meaning of Labor Code section 200.

101. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the applicable Wage Order.

102. Section 11 of the applicable Wage Order states:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

103. At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with The Company.

104. Plaintiff alleges that, at all relevant times during the applicable limitations period, The Company maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 and the applicable Wage Order. Specifically, due to understaffing, heavy workloads, and the pre-shift duties noted above, Plaintiff and **Meal Period Sub-Class** members were denied the opportunity to take timely meal periods prior to the completion of their fifth hour of work. Furthermore, Plaintiff and **Meal Period Sub-Class** members were not relieved of all work duties during unpaid meal periods and were required to keep working during meal breaks.

105. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

106. Plaintiff alleges that, at all relevant times during the applicable limitations period, The Company maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with a second meal period when they worked shifts of ten (10) or more hours and failed to pay them premium wages as required by Labor Code 512 and the applicable Wage Order.

107. Moreover, The Company's written policies fail to inform Meal Period Class Members of their meal period rights under the Labor Code and applicable Wage Orders.

108. At all relevant times, The Company failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

109. Pursuant to Labor Code section 204, 218.6, 226.7 and 512, Plaintiff, on behalf of herself and the **Meal Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

110. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

///

## <u>NINTH CAUSE OF ACTION</u>

## FAILURE TO PROVIDE REST PERIODS

## (Lab. Code §§ 204, 223, 226.7 and 1198)

## (Plaintiff and Rest Period Sub-Class against The Company)

111. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

112. At all relevant times, Plaintiff and the **Rest Period Sub-Class** members have been non-exempt employees of The Company entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

113. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten (10) minutes of net rest time for each four (4) hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

114. Labor Code section 226.7 and Section 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

115. Compensation for missed rest periods constitutes wages within the meaning of Labor Code section 200.

116. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

117. Plaintiff alleges that, at all relevant times during the applicable limitations period, The Company maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten (10) uninterrupted minutes for each four (4) hour work period, or major fraction thereof, as required by the applicable Wage Order.

118. Plaintiff and **Rest Period Sub-Class** members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) The Company's policy of not scheduling each rest period as part of each work shift, including second rest

breaks for shifts of six (6) hours or more; (2) no formal compliant written rest period policy that encouraged employees to take their rest periods, or that properly advised **Rest Period Sub-Class** members of their rest period rights; and (3) The Company's policy and practice of requiring **Rest Period Sub-Class** members to continue working through their rest breaks due to the excessive workload.

119. At all relevant times, The Company failed to pay Plaintiff and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

120. Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of herself and **Rest Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

121. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and **Rest Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

## TENTH CAUSE OF ACTION

## FAILURE TO PAY HOURLY AND OVERTIME WAGES

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Hourly Employee Class)**

122. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

123. At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of The Company entitled to the full protections of the Labor Code and the applicable Wage Order.

124. Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

125. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

126. Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

127. Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

128. Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

129. Labor Code section 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent or employee of another person, to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

130. Labor Code section 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

131. Labor Code section 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

132. Labor Code section 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

133. Labor Code section 510 and Section 3 of the applicable Wage Order require employees to pay non-exempt employees overtime wages of no less than one and one-half (1.5) times their respective regular rates of pay for all hours worked in excess of eight (8) hours in one workday, all hours worked in excess of forty (40) hours in one workweek, and/or for the first eight (8) hours worked on the seventh consecutive day of one workweek.

134. Labor Code section 510 and Section 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two (2) times their respective regular rates of pay for all hours worked in excess of twelve (12) hours in one workday and for all

hours worked in excess of eight (8) hours on a seventh consecutive workday during the workweek.

135. Plaintiff is informed and believes that, at all relevant times, The Company has applied centrally devised policies and practices to him and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

136. At all relevant times, The Company failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

137. Plaintiff and **Hourly Employee Class** members were not paid proper wages and overtime for all hours worked, at the proper rates of pay. First, The Company implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiff and **Hourly Employee Class**, and upon which their pay was based, and generally did so to the detriment of the Plaintiff and **Hourly Employee Class**, and these unlawfully rounded time entries were inputted into The Company's payroll system from which wage statements and payroll checks were created. The Company did so with the ostensible intent of paying Plaintiff and **Hourly Employee Class** members only for the hours they were scheduled to work, rather than the hours they were actually under The Company's control. Plaintiff contends this policy is not neutral and results, over time, to the detriment of the Plaintiff and **Hourly Employee Class** members by systematically undercompensating them.

138. Plaintiff and **Hourly Employee Class** members were consistently required to perform work, off-the-clock for which they were not paid wages. Specifically, Plaintiff and **Hourly Employee Class** members were required to wait outside of the store location for their manager to arrive at work and allow them inside for them to clock in using the timeclock. Afterwards, the manager would adjust their clock-in times. Further, after clocking out of work, Plaintiff and **Hourly Employee Class** members would discuss work-related issues with their co-workers and supervisors, either on the premises or over the phone. Moreover, Plaintiff and **Hourly Employee Class** members were required to download applications and check their schedules off the clock, for which no wages were paid. Lastly, Plaintiff and **Hourly Employee Class** members' meal periods were interrupted and not duty-free, and they were not paid any wages for work conducted during their unpaid meal periods. The

forgoing and uncompensated working time was under the direction and control of The Company, for which no wages were paid.

139. This uncompensated time caused Plaintiff and **Hourly Employee Class** members to work in excess of eight (8), ten (10), and twelve (12) hours a day and/or forty (40) hours a week, entitling Plaintiff and **Hourly Employee Class** members to minimum and overtime wages, which they were systemically denied.

140. The Company also failed to Plaintiff and **Hourly Employee Class** members overtime wages at the proper and applicable regular rates of pay. Specifically, Plaintiff and **Hourly Employee Class** members earned commissions, spiff pay, as well as performance-based non-discretionary bonuses in addition to their hourly pay. However, these supplemental earnings were not accounted for when determining Plaintiff and **Hourly Employee Class** members' regular rates of pay, and respective and proper overtime rates of pay.

141. As a result of The Company's unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount, subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

142. Pursuant to Labor Code sections 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of herself and **Hourly Employee Class** members, seeks to recover unpaid straight time and overtime wages, interest thereon and costs of suit.

143. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and **Hourly Employee Class** members, seeks to recover reasonable attorneys' fees.

**<u>ELEVENTH CAUSE OF ACTION</u>**

**FAILURE TO PAY PROPER SICK PAY**

**(Lab. Code § 246)**

**(Plaintiff and Sick Pay Class)**

144. Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

145. Labor Code Section 246 affords an employee “who works in California for 30 or more days within a year from the commencement of employment [] paid sick days . . . of not less than one hour per every 30 hours worked” and “no less than 24 hours of accrued sick leave or paid time off by the 120th calendar day of employment or each calendar year, or in each 12-month period.”

146. Additionally, Subsection (l) of Section 246 provides:

> For the purposes of this section, an employer shall calculate paid sick leave using any of the following calculations:
>
> (1) Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek.

147. The Company had a common policy and practice of systemically failing to pay Plaintiff and **Sick Pay Class** Members the requisite sick time pay in accordance with California Law. Specifically, Plaintiff and **Sick Pay Class** Members worked for The Company for more than 30 days, but were not paid at least one hour of sick pay for every 30 hours of work, or at least 3 days of sick time for every 12 month period of work. Additionally, the sick pay paid to Plaintiff and **Sick Pay Class** Members did not account for the shift differential pay as well as performance-based non-discretionary bonuses, which were never factored into the rate upon which sick pay was accrued and paid.

148. Therefore, **Sick Pay Class** Members are owed the unpaid balance of said wages pursuant to the Wage order according to proof at trial, interest pursuant to Labor Code §§ 218.6 and 1194(a), Civil Code §§ 3287 and § 3289, and reasonable attorneys' fees and costs and/or penalties pursuant to Labor Code § 558(a).

## <u>TWELFTH CAUSE OF ACTION</u>

## FAILURE TO PAY VACATION WAGES

**(Lab. Code § 227.3)**

**(Plaintiff and Vacation Pay Class)**

149. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

150. California Labor Code section 227.3 provides:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

151. At all relevant times during the applicable limitations period, Plaintiff and members of the **Vacation Pay Class** accrued vacation time, and/or paid time off, during their employment with The Company.

152. However, The Company implemented a common policy and practice of failing to pay Plaintiff and **Vacation Pay Class** members for all accrued vacation wages upon separation of employment, in violation of Labor Code 227.3.

153. By reason of the above, Plaintiff and the members of the **Vacation Pay Class** are entitled to restitution for all unpaid amounts due and owing to within four (4) years of the date of the filing of the original Complaint until the date of entry of judgment.

154. Plaintiff, on behalf of herself and the members of the **Vacation Pay Class**, seeks interest thereon pursuant to California Labor Code section 218.6, costs pursuant to California Labor Code section 218.6, and reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## THIRTEENTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

**(Lab. Code § 226)**

**(Plaintiff and Wage Statement Penalties Sub-Class)**

155. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

156. Labor Code section 226(a) states:

> An employer, semimonthly or at the time of each payment of wages,

> shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

157. The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006).

158. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, The Company has failed to provide Plaintiff and **Wage Statement Class** members with written wage statements as described above. Additionally, the wage statements issued to class members failed to account for the unpaid minimum wages, overtime, and premium pay wages described above.

159. Furthermore, The Company failed to provide Plaintiff and **Wage Statement Class** Members with paper pay stubs as required by Labor Code § 226, applicable Wage Orders, and DLSE

Opinion Letters. Plaintiff's and **Wage Statement Class** members' wage statements were only provided in electronic format in violation of Labor Code § 226.

160. Plaintiff is informed and believes that The Company's failure to provide Plaintiff and **Wage Statement Class** members with accurate written wage statements was intentional in that The Company has the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that The Company has known do not comply with Labor Code section 226(a).

161. Plaintiff and **Wage Statement Class** members have suffered injuries, in that The Company has violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements has prevented immediate challenges to The Company's unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

162. Pursuant to Labor Code section 226(e), Plaintiff, on behalf of herself and **Wage Statement Class** members, seeks the greater of actual damages or $50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4000.00 per class member, as well as awards of reasonable attorneys' fees and costs.

## FOURTEENTH CAUSE OF ACTION

## FAILURE TO TIMELY PAY ALL FINAL WAGES

**(Lab. Code §§ 201-203)**

**(Plaintiff and Waiting Time Penalties Sub-Class against The Company)**

163. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

164. At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with The Company, to timely payment of all wages

earned and unpaid before termination or resignation.

165. At all relevant times, pursuant to Labor Code section 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

166. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages at the time of resignation.

167. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, The Company has failed to timely pay **Waiting Time Penalties Sub-Class** members all their final wages in accordance with the Labor Code.

168. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, The Company has maintained a policy or practice of paying **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code sections 201 or 202 by failing to timely pay them all final wages.

169. Plaintiff is informed and believes, and thereupon alleges that The Company's failure to timely pay all final wages to him and **Waiting Time Penalties Sub-Class** members has been willful in that The Company has the ability to pay final wages in accordance with Labor Code sections 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

170. Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of herself and **Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of thirty days, and interest thereon.

171. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of herself and **Waiting Time Penalties Sub-Class** members, seeks awards of reasonable attorneys' fees and costs.

///

///

///

///

**<u>FIFTEENTH CAUSE OF ACTION</u>**

**FAILURE TO INDEMNIFY**

**(Lab. Code § 2802)**

**(Plaintiff and Reimbursement Class)**

172. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

173. Labor Code section 2802(a) states:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

174. Plaintiff and **Expense Reimbursement Class** members were not reimbursed for business expenses incurred in executing their duties under Defendant's employ. Specifically, Plaintiff and **Expense Reimbursement Class** members were required to pay the costs of their cell-phones, which they used to communicate with co-workers and supervisors, their home internet plans which were necessary when working from home, and any stationary they used such as post-it notes, which were all necessary to perform their duties under The Company's employ. Plaintiff and **Expense Reimbursement Class Members** were not reimbursed for these necessary work-related expenses.

175. Accordingly, Plaintiff and **Expense Reimbursement Class** members are entitled to restitution for all unpaid amounts due and owing to within four (4) years of the date of the filing of the Complaint and until the date of entry of judgment.

176. Plaintiff, on behalf of herself, and **Expense Reimbursement Class** members, seeks interest thereon and costs pursuant to Labor Code section 218.6, and reasonable attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5.

///

///

///

///

///

## SIXTEENTH CAUSE OF ACTION

**UNFAIR COMPETITION**

**(Bus. & Prof. Code §§ 17200 *et seq*.)**

**(Plaintiff and UCL Class)**

177. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

178. Business and Professions Code section 17200 defines "unfair competition" to include any unlawful business practice.

179. Business and Professions Code sections 17203-17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure section 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

180. California law requires employers to pay hourly, non-exempt employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonable should know that employees have worked.

181. Plaintiff and the **UCL Class** members re-allege and incorporate the FIRST, SECOND, THIRD, FOURTH, FIFTH, AND EIGHTH causes of action herein.

182. Plaintiff lost money or property as a result of the aforementioned unfair competition.

183. The Company has or may have acquired money by means of unfair competition.

184. Plaintiff is informed and believes, and thereupon alleges that by committing the Labor Code violations described in this Complaint, The Company violated Labor Code sections 215, 216, 225, 226.6, 226.7, 227.3, 246, 354, 408, 512, 510, 553, 1175, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and 2802 as well as applicable Wage Orders, which make it a misdemeanor to commit the violations alleged herein.

185. The Company has committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to: provide non-exempt employees with compliant meal and rest periods; pay for all hours worked at the proper rates of pay; proper sick time pay; proper vacation wages; and reimbursement for necessary business expenditures.

186. The Company's unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et seq*. Business and Professions Code section 17200 *et seq*. protects against unfair competition and allows a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful or fraudulent business practice to seek restitution on his own behalf and on behalf of similarly situated persons in a class action proceeding.

187. As a result of The Company's violations of the Labor Code during the applicable limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages. Specifically, Plaintiff has lost money or property as a result of The Company's conduct.

188. Plaintiff is informed and believes that other similarly situated persons have been subject to the same unlawful policies or practices of The Company.

189. Due to the unfair and unlawful business practices in violation of the Labor Code, The Company has gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

190. California's Unfair Competition Law ("UCL") permits civil recovery and injunctive relief for "any unlawful, unfair or fraudulent business act or practice," including if a practice or act violates or is considered unlawful under any other state or federal law.

191. Accordingly, pursuant to Business and Professions Code sections 17200 and 17203, Plaintiff requests the issuance of temporary, preliminary and permanent injunctive relief enjoining The Company, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Wage Orders.

192. Accordingly, pursuant to Bus. & Prof. Code sections 17200 and 17203, Plaintiff requests the issuance of temporary, preliminary and permanent injunctive relief enjoining The Company, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders; and upon a final hearing seeks an order permanently enjoining The Company, and each of them, and their respective agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission

Wage Orders.

193. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of herself and **UCL Class** members, seeks declaratory relief and restitution of all monies rightfully belonging to them that The Company did not pay them or otherwise retained by means of its unlawful and unfair business practices.

194. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

195. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of herself and **UCL Class** members, seeks declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

196. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

a. For all compensatory damages in the form of consequential, and incidental damages, including but not limited to back pay, front pay, loss of earnings and employee benefits and damages for emotional distress, according to proof;

b. For general and special damages, and interest thereon, according to proof;

c. For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties adumbrated in this Complaint;

d. For punitive and exemplary damages, according to proof;

e. An order that the action be certified as a class action;

f. An order that Plaintiff be appointed class representative;

g. An order that counsel for Plaintiff be appointed class counsel;

h. Unpaid wages and overtime;

i. Actual damages;

j. Liquidated damages;

k. Unreimbursed expenses;

l. Restitution;

m. Declaratory relief;

n. Pre-judgment interest;

o. Statutory penalties;

p. Costs of suit;

q. Reasonable attorneys' fees; and

r. Such other relief as the Court deems just and proper.

Dated: October 23, 2025

D.LAW, INC.

*/s/ David Keledjian*

David Keledjian
Attorney for Plaintiff
NISHAE D. BROWN, and the putative class

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, all other similarly situated, and the general public, hereby demands a jury trial on all issues so triable.

Dated: October 23, 2025

D.LAW, INC.

*/s/ David Keledjian*

David Keledjian
Attorney for Plaintiff
NISHAE D. BROWN, and the putative class